## KITHCART v. METROPOLITAN LIFE INS. CO.

### No. 10715.

Circuit Court of Appeals, Eighth Circuit.

March 9, 1937.

Charles N. Sadler, of Kansas City, Mo. (Harold Waxman, of Kansas City, Mo., on the brief), for appellant.

Henry I. Eager, of Kansas City, Mo. (William C. Michaels, of Kansas City, Mo., Harry Cole Bates, of New York City, and Michaels, Blackmar, Newkirk, Eager & Swanson, of Kansas City, Mo., on the brief), for appellee.

Before GARDNER, THOMAS, and FARIS, Circuit Judges.

GARDNER, Circuit Judge.

Appellant brought suit in equity to set aside a judgment entered in the United States District Court for the Western District of Missouri, the court from which this appeal comes, in a law action wherein he was plaintiff and the appellee was defendant, on the ground that the judgment had been obtained by fraud practiced upon plaintiff by defendant through its agents and servants. We shall refer to the parties as they appeared below.

Defendant filed its motion to dismiss the bill for the reason that the matters and allegations contained in the bill were insufficient in fact and law to constitute a valid action in equity against the defendant. This motion was sustained, and there being no request for leave to amend, the bill was dismissed.

The sole question presented on this appeal is the sufficiency of the bill of complaint. Omitting the formal allegations and those going to the jurisdiction of the court, the bill alleged in substance that at all times mentioned therein plaintiff had an accident policy issued by defendant, by the terms of which he was entitled to recover a certain sum therein mentioned for each week he was disabled through accidental means; that he suffered a total disability from an accident within the terms of the policy and was entitled to be paid therefor the weekly indemnity provided by the policy, but that although he had complied with all the terms and conditions of the policy, defendant refused to pay him any sum whatever; that on or about November 5, 1931, he instituted a suit in the circuit court of Jackson county, Mo., at Kansas City, against defendant to recover the amount due him; that "the petition in which said suit, together with photostatic copy of policy thereto attached is hereby incorporated herein by reference with the same force and effect as if copied verbatim herein; that thereafter and in due time defendant removed said cause to this court on the ground of diversity of citizenship * * *; that defendant filed an answer denying generally all the allegations in said petition"; that said cause was heard before Hon. Albert L. Reeves, one of the judges of said court, and a jury, on or about May 15, 1933, and resulted in a verdict in favor of defendant, and upon the verdict judgment was entered in favor of the defendant; that thereafter, on May 22, 1933, plaintiff filed a motion for new trial, which on July 11, 1933, was overruled, and no appeal was taken therefrom; that said judgment was obtained by fraud on the part of defendant, its agents and servants, practiced upon the court, the jury, and plaintiff in the following respects: "That the chief defense made by defendant on the question of liability under its denial as

aforesaid was that the policy was void because it was obtained by fraud and misrepresentation on the part of plaintiff at the time said policy was issued in that said policy provided that if there was misrepresentation as to sanity, among other things, it should be void, and that plaintiff in his application stated that there was no insanity, and that defendant had no knowledge of any insanity or alleged insanity of plaintiff and especially had no knowledge of the reports of the army surgeon introduced in evidence at the trial of said cause; that it had made no medical examination of plaintiff and for these reasons the policy was void; that in truth and in fact the agent of defendant, R. G. Dennison, who solicited this policy was told and knew of the action of the army surgeon and was told that plaintiff denied such report and always maintained that he was sane, and said agent before issuing said policy told plaintiff that under that state of facts his company (this defendant) would require a medical examination and directed this plaintiff to go to a physician, hereinafter named, for such purpose; that this plaintiff did go to said physician and told said physician of the action of the army surgeon and was examined by said physician and said policy was issued with full knowledge of such conditions by defendant, its agents and servants and it waived any right to make this defense; that this plaintiff was led to believe, and did believe, by defendant, its agents and servants, both by acts and words that no such defense would be made and he did not know and had no reason to believe it would be made and therefore made no preparation to meet any such defense, believing and knowing that if such defense was attempted the records of said defendant would show it was waived; that he did not know or expect such defense to be made until after the trial of this case was begun; that defendant, its agents and servants, concealed and fraudulently hid all records showing such medical examination and its knowledge of such facts, and denied that any medical examination was made or that it knew of the action and reports of the army surgeon, and fraudulently concealed the whereabouts of the said agent taking the application and who took plaintiff to a physician for examination; that this plaintiff was assured by such agent that no question of sanity would or could be raised by defendant after such examination and this plaintiff did not make any record of the name

of the physician and when this unexpected defense was raised during the trial he was unable to remember the name of the physician or the exact number of his office and after making every effort to locate such physician and the said agent he was by reason of the willful and fraudulent acts of defendant, its agents and servants as aforesaid, deprived of such testimony and as a direct result of such willful and fraudulent acts of defendant, its agents and servants, he was defeated; that defendant, its agents and servants, fraudulently and willfully concealed the fact that a medical examination had been made and denied that such examination had ever been made, and willfully and fraudulently concealed the whereabouts of said agent and denied that defendant, or its agents and servants here knew anything about him; that such acts and conduct was willful and was done for the purpose of preventing plaintiff from procuring the evidence above mentioned which would have shown that defendant was not entitled to make such defense, and a fraud was thereby practiced upon not only this plaintiff but the court and jury trying the said case; that by reason of the wrongful and willful acts of defendant, its agents and servants, he was unable to prove a waiver by defendant; that he was unable to get such facts for a long time thereafter; that plaintiff has since learned that Dr. W. A. Armour of Kansas City, Missouri, made said examination and was in Kansas City at the time of said trial and if plaintiff had known his name, could have procured his attendance as a witness; that plaintiff believes that if said physician had been placed upon the witness stand he would have testified that he did make such examination for said defendant, its agents and servants, and made a report of his findings, together with the fact that plaintiff had told him of the action of the army surgeon as aforesaid; that defendant, its agents and servants, also concealed the whereabouts of said agent Dennison to whom such information was given and denied any knowledge of his whereabouts, when in truth and in fact said Dennison was then in the employ of defendant and it knew his whereabouts and willfully and fraudulently concealed the same and denied such knowledge for the sole purpose of preventing this plaintiff from proving by such witness that he did not known of the action of the army surgeon, did send plaintiff to a physician for examination, and did assure plaintiff that

everything was all right and that no question of sanity could or would ever be raised by defendant in connection with said policy." It was then alleged that plaintiff did not discover the alleged fraud "until very recently."

On motion to dismiss, all well-pleaded facts, but not conclusions, are admitted.

It may be gathered from the allegations of the bill that it was the claim of plaintiff that through the fraudulent acts of defendant, he was prevented from producing certain testimony in rebuttal of an affirmative defense interposed by defendant. Just what evidence plaintiff was prevented from producing is not made clear. Neither is it clear what acts were committed by defendant, or its representatives, which it is claimed constituted fraud. There is reference to some "action of the army surgeon"; but what this action was, or what bearing it may have had upon the right of plaintiff to recover, is not disclosed. It is elementary that a bill of complaint charging fraud must set out with some degree of particularity the material facts claimed to constitute the fraud. Ambler v. Choteau, 107 U.S. 586, 1 S.Ct. 556, 27 L.Ed. 322; Toledo Scale Co. v. Computing Scale Co., 261 U.S. 399, 43 S.Ct. 458, 67 L.Ed. 719; Continental Natl. Bank v. Holland Banking Co. (C.C.A.8) 66 F.(2d) 823.

The general purpose of the suit was to set aside a judgment rendered by a court which confessedly had jurisdiction both of the subject-matter and the parties. It is in the interest of the public that there should be an end to litigation, and before a judgment will be set aside for fraud practiced by the prevailing party, the bill must aver facts from which fraud may be legally deduced. It is averred that "the chief defense made by defendant on the question of liability * * * was that the policy was void because it was obtained by fraud and misrepresentation" as to plaintiff's sanity; that he had been led to believe that no such defense would be made; and that he was not prepared to meet such defense. If taken by surprise plaintiff should have asked for a continuance, which he did not do. If, as alleged, the defendant had records, plaintiff should have demanded their production, or have issued a subpœna duces tecum for the purpose of making them available. Plaintiff himself knew, according to the averments of the bill, of his alleged conversation with the soliciting agent. He also knew that he had been given a medical examination and that he told the physician "of the action of the army surgeon," so that apparently he was in position to testify to all the matters which he now says were suppressed by defendant. It was, of course, not the duty of defendant to prepare plaintiff's case for trial, nor to furnish him with evidence, at least without some request or demand so to do. He might even have dismissed his action without prejudice, if, as he now says, he was taken wholly unawares by the course of the trial; but this he did not do, but submitted his case to the court and jury, apparently taking chances on a successful outcome of the litigation.

But while it is averred that the chief defense made by defendant was that the policy was void because it was obtained by fraud and misrepresentation, it appears from the bill that defendant filed an answer "denying generally all the allegations of said petition." Such an answer, as was pointed out by the lower court in its opinion dismissing the bill, presented no issue as to the validity of the insurance policy, and hence the evidence referred to was wholly immaterial, if it had been otherwise admissible. It has been well settled by the decisions of the Supreme Court of Missouri, as well as in other jurisdictions, that an insurance company cannot, under a general denial, raise any issue of misrepresentation or fraud in the procurement of a policy, but it must affirmatively plead such misrepresentation or fraud. Christian v. Connecticut Mutual Life, 143 Mo. 460, 45 S.W. 268; Smiley v. John Hancock Life (Mo.App.) 52 S.W.(2d) 12; Simpson v. Metropolitan Life (Mo.App.) 282 S.W. 454; Conaway v. Commonwealth Cas. Co., 225 Mo.App. 421, 37 S.W.(2d) 493; Business Men's Assur. Co. v. Campbell (C.C.A.8) 6 F.(2d) 540; American Employers' Liability Co. v. Barr (C.C.A.8) 68 F. 873.

The contract between plaintiff and defendant upon which the law action was predicated was a written contract, and what might have been said to plaintiff by a mere solicitor would not have been binding upon the insurance company in the face of the provisions in its policy. In the application upon which the policy issued, made a part of the bill by reference, plaintiff represented that no information had been furnished to any agent of the company, or other person, relating to the insurance "other than as written herein." It is also there represented that "no statements made

nor information furnished shall be binding upon the company unless written herein, and that no insurance will be in force on this application unless and until this application is approved, etc." This was a direct limitation upon the authority of any soliciting agent to bind the company by oral conversations outside of the written terms of the policy and the application. Mutual Life Ins. Co. of New York v. Hilton-Green, 241 U.S. 613, 36 S.Ct. 676, 60 L.Ed. 1202; New York Life Ins. Co. v. Fletcher, 117 U.S. 519, 6 S.Ct. 837, 29 L.Ed. 934; New York Life Ins. Co. v. McCreary (C.C.A.8) 60 F.(2d) 355; Gill v. Mutual Life Ins. Co. (C.C.A.8) 63 F.(2d) 967.

■ .There was presented to the lower court the pleadings in the original action, copy of the motion of defendant for a directed verdict, which was denied, copy of the court's charge to the jury, and copy of the judgment, with request that the court take judicial notice thereof. If we may take judicial notice of these records, they are conclusive against plaintiff on the question of the nature of the defense interposed by defendant in the original action. The answer of defendant contains no such plea. The motion for a directed verdict goes to the merits of plaintiff's cause of action, with no reference whatever to any claim of fraudulent representations in the securing of the policy. The charge to the jury did not submit any such issue and makes no reference to such an issue. We think the case may well turn on the proposition that the evidence, which it is alleged was fraudulently suppressed or concealed, could not possibly have been admissible under the pleadings, but we think the court may take judicial notice of its own records of prior interrelated litigation between the same parties. Freshman v. Atkins, 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193; De Gallard de Brassac de Bearn v. Safe Deposit Co., 233 U.S. 24, 34 S.Ct. 584, 58 L.Ed. 833; Natl. Fire Ins. Co. v. Thompson, 281 U.S. 331, 50 S.Ct. 288, 74 L.Ed. 881; Alexander v. Hillman, 296 U.S. 222, 56 S.Ct. 204, 80 L.Ed. 192; Morse v. Lewis (C.C.A.4) 54 F.(2d) 1027; So. Pacific Ry. Co. v. Groeck (C.C.) 68 F. 609; Suren v. Oceanic S. S. Co. (C.C.A.9) 85 F.(2d) 324.

In Hanna v. Brictson Mfg. Co., 62 F.(2d) 139, this court held that a suit to set aside a prior adjudication in bankruptcy and a prior equity decree was in reality a continuation of the prior equity suit.

The purpose of this suit is to secure a new trial in the prior action at law. In that sense it is in the nature of a bill of review and is not looked upon with favor. As said by this court in Simonds v. Norwich Union Indemnity Co., 73 F.(2d) 412, 415: "Bills of review for newly discovered evidence are not favored by the courts. Their allowance rests upon a sound judicial discretion to be exercised cautiously and sparingly. It must be shown convincingly that the matter could not have been discovered or submitted in the exercise of reasonable diligence, and in time to be presented during the progress of the litigation now culminated in judgment or decree. Obear-Nester Glass Co. v. Hartford-Empire Co. (C.C.A.8) 61 F.(2d) 31, 34; Southard v. Russell, 16 How. 547, 14 L.Ed. 1052."

There being no pertinent or material evidence to conceal, of course no evidence was concealed, and neither has any been discovered. The bill of complaint is wholly without merit, and in view of the record in the original case, it is a strain upon the credulity of the court to believe that it was brought in good faith.

The decree appealed from is affirmed.