## UNITED STATES v. KUNZ.
### No. 286, Docket 20656.

Circuit Court of Appeals, Second Circuit. July 28, 1947.

---

George C. Dix and David S. Kumble, both of New York City, for defendant-appellant.

John F. X. McGohey, U. S. Atty., of New York City (John F. Ryan, Asst. U. S. Atty., of New York City, of counsel), for plaintiff-appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The appellant Kunz first came to this country in 1928 and was naturalized on August 26, 1937. He joined the New York Unit of the German-American Bund in December 1938 and played a prominent role in Bund activities until his conviction, in the fall of 1941, in the District Court for the Southern District of New York on a charge of conspiracy to violate the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 301 et seq. While

serving his sentence following that conviction, denaturalization proceedings were instituted against him, along with nineteen other defendants, on the ground that he had perpetrated a fraud at the time he took his oath renouncing all allegiance and fidelity to his homeland and agreeing to support and defend the Constitution and the laws of the United States against all enemies. He filed an answer and was represented at the trial by an attorney appointed by court. Judge Bright, in an opinion reported in 49 F.Supp. 407, denied motions made by him and ten of the other defendants to dismiss the complaint, and subsequently entered judgment effecting denaturalization. Kunz did not appeal from the judgment and his time to appeal has long since expired. Four of his co-defendants appealed, and the denaturalization decrees against them were reversed by this court. See United States v. Sotzek et al., 2 Cir., 144 F.2d 576. The reversal by this Court was based primarily on the decision of the Supreme Court in Baumgartner v. United States, 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525, which was decided during the pendency of the appeal. The Court there held that evidence of a man's attitude in political matters at a period many years subsequent to his naturalization does not afford sufficient proof that on the earlier occasion he was committed to those views and hence a fortiori it is no proof that he had any mental reservation at the time of taking his oath of naturalization. Kunz's conviction of conspiracy to interfere with the Selective Service Law was reversed along with that of others by the Supreme Court on June 11, 1945, in Keegan v. United States, 325 U.S. 478, 65 S.Ct. 1203, 89 L.Ed. 1745. On July 15, 1945, defendant was released from prison and has since been in the custody of the Immigration and Naturalization authorities. While Kunz was thus interned, he requested Judge Bright to appoint counsel for him, and this was done. On October 26, 1945, he filed a petition termed "in the nature of a bill of review" to vacate and set aside the decree of denaturalization; this motion or bill of review was denied by Judge Bright in a decision dated May 28, 1946, reported in D.C., 5 F.R.D. 391. Kunz appealed from that decision and, at his re-

quest, this court appointed the attorneys who had represented him in the district court as his counsel on appeal. While the appeal was pending, his counsel made a further motion for an order vacating the denaturalization decree on the ground of newly discovered evidence claimed to indicate extrinsic fraud in the denaturalization proceedings. This further motion was also heard by Judge Bright and was denied in an order dated April 18, 1947. It is from these two orders that the present appeal has been taken.

Judge Bright has dealt with all of the defendant's contentions in careful opinions to which perhaps nothing needs to be added. The real complaint of Kunz, though he makes numerous technical points, is that he might have secured a reversal of the decree of denaturalization if he had taken an appeal. He was in custody while his time to appeal was running and he says that rendered appealing impracticable. But he could have had a lawyer assigned to prosecute his appeal if he could not have obtained one himself. Difficulty in obtaining counsel—if such difficulty existed—did not cure his failure to appeal. The fact probably is that neither he nor his Bund associates set much value on American citizenship until the war was over, Germany ceased to be a good place to live in, and they were held for deportation.

It is hard to see how the defendant's motion based on alleged newly discovered evidence was properly made, since an appeal from the order denying his other motion was still pending and no showing has been made that the case had been remanded by this court so that the new motion might be considered. But irrespective of this technicality, we cannot discover any merit in either of the motions which Judge Bright denied.

The defendant's first motion in the nature of a bill of review was based upon the claim that the court was in error in granting a decree of denaturalization and that the error was apparent on the face of the record as well as by an examination of the pleadings and findings. This contention is apparently based on the decision in Baumgartner v. United States, 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525, where it was held that adherence to the Hitler cause begun some time subsequent to the date of naturalization was not by itself sufficient to show that the same mental attitude existed when the alien was originally admitted to citizenship and took an oath to support and defend the Constitution of the United States. After Kunz was subject to a decree of denaturalization he took no appeal. He cannot now employ a bill of review as a substitute for an appeal even on the ground that the Supreme Court in the Baumgartner case had changed what was supposed to be the law. As that court said, per Pitney, J., in Simmons Co. v. Grier Bros. Co., 258 U.S. 82, 88, 42 S.Ct. 196, 66 L.Ed. 475, "a change in the authoritative rule of law, resulting from a decision by this court announced subsequent to the former decree, neither demonstrates an 'error of law' apparent upon the face of that decree nor constitutes new matter in pais justifying a review." See also Scotten v. Littlefield, 235 U.S. 407, 411, 35 S.Ct. 125, 59 L.Ed. 289. In Sunal v. Large, 67 S.Ct. 1588, an attempt was made to use a writ of habeas corpus as a substitute for an appeal. In that situation Mr. Justice Douglas expressed the same view we are taking as to the use of a bill of review. His words seem most pertinent and were as follows: "If defendants who accept the judgment of conviction and do not appeal can later renew their attack on the judgment by habeas corpus, litigation in these criminal cases will be interminable. Wise judicial administration of the federal courts counsels against such course, at least where the error does not trench on any constitutional rights of defendants nor involve the jurisdiction of the trial court."

The fraud alleged as a ground for the second motion seems to have consisted in the claimed introduction of Exhibits 139, 140 and 13(a)-18 by the Government under a pretrial stipulation permitting the use of photostatic copies. It is charged that they were forged and fraudulent. Judge Bright, however, passed on these charges and found that in the case of Exhibit 139, the original, and not photostatic, copies were offered in evidence. It consisted of minutes of the Bund meetings held at New

York on September 3, 4, and 5, 1938, proved by the testimony of Luedtke, the national secretary of the Bund from January 1940 to December 1941. We are not given copies of these minutes and do not know their contents or bearing.

According to the opinion of Judge Bright rendered on the motion to set aside the decree for fraud Luedtke testified that he had attended all of the national conventions from 1934 to 1941; that stenographic minutes were kept which were subsequently transcribed, and that the minutes which he identified as Exhibit 139 were the original minutes of the convention in 1938, at which he was present, and which afterwards had been transcribed. He further testified that they represented a true picture of what went on at that convention, that he had read them and that they were correctly transcribed.

Judge Bright further said in his opinion that the stenographic minutes of the proceedings of the national convention held at Chicago in September 1940 were marked Exhibit 140; that the same witness Luedtke had testified in the same manner as to these minutes as he had as to Exhibit 139.

Fritz Kuhn, who was national leader of the German-American Bund from January 1936 to December 1939, is said to have informed the attorney for Kunz (who interviewed Kuhn when the latter was in jail) that no minutes were authentic which did not bear Kuhn's initials. It is hard to believe that the minutes of the September 1940 convention could have borne the initials of Kuhn, for he was then incarcerated under the conspiracy indictment. More than that, he was not at that time the national leader. His statement to the counsel for Kunz that the minutes of that convention bore his initials, even if admissible as evidence, Judge Bright justifiably found to be untrue. Moreover, as already noted, the statements of Kuhn impugning the minutes, or copies thereof, which were introduced were met by the testimony of Luedtke that Exhibits 139 and 140 truly represented what occurred at the meetings of the Bund—testimony which Judge Bright believed. In addition to this, Judge Bright found that they had in no way determined the result of his decree.

As for Exhibits 13(a)-18, which are apparently introduced by the Government to show the connection between the German-American Bund and the Nazi Party, they were authenticated at the trial that resulted in the denaturalization decree, and their correctness was not there questioned. Not only was no evidence that would be admissible presented showing that the photostatic copies of letters represented forged or fraudulent originals, but, as in the case of the minutes of the German-American Bund, Judge Bright stated that the letters submitted to him, then unquestioned as to authenticity, were accompanied by many other documents as well as oral testimony, and that the letters did not affect the result of his decision. The claim that the government perpetrated a fraud on Kunz is entirely without substance and was rightly so regarded by the trial judge. Indeed the defendant seeks to substitute an investigation of the government for any real proof of fraud.

For the foregoing reasons, both orders appealed from are affirmed.